IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JEFFREY L. GRUWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-845-GMS |
| | ) | |
| CORRECTIONAL MEDICAL SERVICES, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

**I. INTRODUCTION**

The plaintiff, Jeffrey L. Gruwell ("Gruwell"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this lawsuit on December 26, 2007, pursuant to 42 U.S.C. § 1983.[1] He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 2, 5.) Now before the court is the defendant Correctional Medical Services' ("CMS") motion for summary judgment, Gruwell's reply, and CMS' response.[2] (D.I. 49, 53.) For the reasons that follow, the court will grant the motion for summary judgment.

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] Also pending is CMS' motion to strike Gruwell's letter/sur-reply. (D.I. 36, 37.) The court will not consider the letter/sur-reply as it was filed in derogation of LR 7.1.2(a). When Gruwell had not filed a response to the motion to strike and the court docket showed no activity by him after September 8, 2009, on June 11, 2010, the court ordered Gruwell to show cause why the case should not be dismissed for failure to prosecute. (D.I. 40.) Gruwell responded that he was actively pursuing this litigation and had been in contact with counsel for CMS. (D.I. 41.) Accordingly, the court finds he has shown cause why the case should not be dismissed for failure to prosecute.

## II. BACKGROUND

Gruwell, who has spinal issues and cannot walk without a cane or walker, alleges that CMS is deliberately indifferent to his serious medical needs. Gruwell was injured in 2005 and suffers from severe pain. The complaint alleges that on June 6, 2007, Dr. Peter Binnion ("Dr. Binnion") determined that Gruwell needed a neurological consult, but as of November 26, 2007, he had not seen a specialist. Gruwell alleges that on November 28, 2007, Dr. Binnion told him that CMS denied the neurological consult even though it knew that he had spinal issues and could not ambulate without a walker.

Medical records from Johns Hopkins Hospital, Baltimore, Maryland indicate Gruwell underwent a spinal laminectomy in early April 2005.[3] He was readmitted in late April and testing indicated a central left disc herniation at T6-T7, mild disc bulge at multiple levels, and a small central disc herniation at S-1. Gruwell was able to ambulate with a cane.

By May 4, 2007, Gruwell was housed at the Howard R. Young Correctional Institution ("HRYCI"), Wilmington, Delaware. An intake screening report dated May 4, 2007, notes that he provided a history of spinal surgery and had been prescribed Oxycodone. At the HYRCI he was prescribed Vicodin for pain. It was observed that Gruwell had difficulty walking.

On May 9, 2007, it was noted that Gruwell's pain medication was inadequate, medical awaited verification of his medications, and he was admitted to medical for observation. Gruwell became a patient of the chronic care clinic and received frequent evaluations. June 6, 2007 progress notes state: "first CCC visit. Car accident – paralyzed ('dorsal compression spinal cord'); 'lot's of nerve damage;' recently seen by neurosurgeons. Original work done at Hopkins.

---

[3]Unless otherwise noted, Gruwell's medical records are found at D.I. 32, ex. A.

Goes to pain center at St. Francis. Can't walk – deformity right leg and uses a walker. This is far too complex for me to solve; requires careful neurological examination (Hopkins or U of P would be appropriate.)."

Gruwell was released from the HRYCI at some time in June 2007 and returned to the HYRCI on July 25, 2007.[4] Upon his return he provided a history of using a cane at home and taking Atenolol, OxyContin, and Roxycodone. He was prescribed alternative medication for pain and inflammation and sent to the infirmary due to difficulties with ambulation. On October 26, 2007, Dr. Binnion contacted Johns Hopkins to obtain the Gruwell's neurological records. Medical records indicate that Gruwell was seen by medical personnel on the following dates: In 2007 on May 16 and 31; August 8, October 18 and 23, and November 7; in 2008 on January 4, 7, 11, and 24, February 20, April 7 and 24, May 7, 29 and 30, June 2-3, 8, 19-22, and 28-30, July 3-8, 10-11, 13-16, and 19-31, August 1-2, 4-21, and 23-31, September 1-5, 7-9, 13-7, and 30, October 1-3, 5-6, 11-12, 14, 20, and 22-31, and November 1-9; and in 2009 on January 8-12, 16, 17, 19-24, and February 4-5, and 9.

Physicians orders were written in 2007 on May 18, 19, and 21, July 25 and 26, September 26, October 2, 12, 14, 15, and 26, November 7, 17, and 28; in 2008 on February 20, March 9 and 27, April 17 and 24, May 15 and 19, October 22 and 23, November 6, 8-10, 12-13, 17-18, and 20-22, and December 2 and 30; and in 2009 on January 1-3, 5- 8, 19, 21 and 24 for the use of a walker, medications, mental health treatment, a cane, and various medical tests.[5] Medical

---

[4]Gruwell testified that he was locked up in pretrial, released in June, and incarcerated again on July 25, 2007. (D.I. 32, ex. B19-20.)

[5]Medication prescribed to Gruwell included Elavil, Celexa, Atenolol, Tylenol #3, Motrin, Mobic, Cipro, Tylenol, Trazdone, Doxycycline, multivitamins, Vistaril, Eucerin, Prilosec,

records and medication administration records indicate that Gruwell has been prescribed, and received, various types of pain medication consistently since the date of his incarceration, including Tylenol #3, Motrin, Vicodin, Mobic, Toradol, Neurontin, and Methadone.[6]

Medical staff also submitted consult requests. As of August 2, 2007, a request for a urology consult had been completed, an appointment scheduled for August 21, 2007, and Gruwell was seen that day. As of September 25, 2007, Gruwell had seen a specialist who fitted him with a "right ankle foot orthosis" and instructed him in proper care and maintenance of the unit. On November 8, 2007, Dr. Binnion submitted a request for a neurological consult. The request was approved on November 20, 2007, and Gruwell was seen by a neurologist on January 7, 2008. After Gruwell was seen by the neurologist, Dr. Binnion submitted a consult request on January 11, 2008, for Gruwell to undergo a high resolution cervical and thoracic MRI. The MRI was performed on January 25, 2008. On February 27, 2008, a consultation request was submitted for Gruwell to undergo an EMG and it was performed on April 7, 2008, with a finding of thoracic myelopathy. On October 9, 2008, a consult request was submitted for pain management, and it appears the request was denied on December 8, 2008. (D.I. 34, ex.) On November 21, 2008, a consult request was submitted for a return visit to the neurologist. The request was approved and Gruwell saw the neurologist on January 8, 2009 who noted no change in his condition, but recommended adding a medication.

---

Vicodin, Toradol, Methadone, Ditropan, Clindamycin, Lasix, Neurontin, Benadryl, and Lopid.

[6]On August 31, 2008, medical staff discussed Gruwell's pain management and changed his pain medication to Methadone.

Gruwell was admitted to the infirmary at the HYRCI on May 19, 2008 for pain management so that he could receive more frequent medication dosing. He remained there through August 4, 2008, when he received same day surgery for a permanent suprapubic catheter placement, and returned to the infirmary. He continued his stay in the infirmary through September 13, 2008, when he was sent to the emergency room at Christiana Hospital to rule out a deep vein thrombosis. He returned to the infirmary and remained there until September 27, 2008, when he was sent to the Christiana Hospital emergency room for cellulitis of the lower extremities. He returned to the infirmary on September 30, 2008 and remained there until October 14, 2008, when he was transferred to the VCC. There, he was housed in the infirmary to accommodate his needs and oversee management of pain and proper use of pain medications.[7] Gruwell was discharged from the VCC infirmary on January 21, 2009, and continues to receive treatment for his chronic pain.

Gruwell testified that after his second visit with the neurologist, he was told that if Johns Hopkins could not do anything for him, then the neurologist would not be able to do anything either. (D.I. 32, ex. B15-17.) He testified that he spent a year at the HRYCI, and suffered, with no medication, the only medication he received was Tylenol #3, and he was in a lot of pain. (*Id.* at B17-18.) He was unaware that he was given Mobic. Gruwell testified that he was not "unsatisfied" with the level of pain relief medication he was provided, but he did not receive the medications he was supposed to because the prison medical providers did not check with his

---

[7]Medical notes indicate that, while housed in the VCC infirmary, Gruwell was caught regurgitating his methadone and giving or selling it to an inmate worker. Thereafter, orders were given to crush and dissolve the medication and to conduct mouth checks. Apparently, the same behavior occurred at the HRYCI.

previous doctors, and he did not see proper physicians such as a pain management specialist. (*Id.* at B21-22.)

## III. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The facts must be viewed in the light most favorable to the nonmoving party and all reasonable inferences from the evidence must be drawn in that parties' favor. *Conopco, Inc. v. United States*, 572 F.3d 162, 165 (3d Cir. 2009). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). If the court determines that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

## B. Medical Needs

CMS is the only named defendant. During his deposition, Gruwell testified that his claims are: (2) as of the time he filed his complaint, he had not been seen by a neurologist as recommended by Dr. Binnion, who had opined that Gruwell was beyond specialist help and he was unhappy that Dr. Binnion could not treat or diagnose him; (2) the consulting neurologist indicated that he could do nothing for him; and (3) he did not receive the proper medications.[8] (D.I. 32, ex. B10, 26.)

CMS moves for summary judgment on the grounds that Gruwell failed to establish a custom or policy of deliberate indifference to his back pain. It further argues that Gruwell received medical care that was reasonable and appropriate. Gruwell responds that there was a three month delay in obtaining his medical records from Johns Hopkins; the physicians were aware of the pain medication he took yet the medication he was prescribed was not strong enough; CMS was provided with pertinent information in 2007 but it took it eighteen months for him to receive potent narcotic pain medication; it took four months for approval of the neurologist consultation and another two months for him to see the neurologist; he was approved to see a pain specialist but to date has not seen one; and CMS was deliberately indifferent when it waited for a period of time before changing his medication and provided no reason for the delay. In his response to the motion for summary judgment, Gruwell posits that CMS has the following unconstitutional policies: (1) it requires its physicians to receive approval for the administration

---

[8]During his deposition, Gruwell complained of other aspects of his care, but he did not amend his complaint to include the claims. (D.I. 32, ex. B27-39.)

of medication from CMS' main office, and (2) it requires its physicians to submit for approval requests for consultations.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

In addition, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to

state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

"[B]ecause respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories. *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). In order to establish that CMS is directly liable for the alleged constitutional violations, Gruwell "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [he] allege[s]." *Id.* Assuming the acts of CMS's employees have violated Gruwell's constitutional rights, those acts may be deemed the result of a policy or custom of the entity for whom the employee works, thereby rendering the entity liable under § 1983, where the inadequacy of existing practice is so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need. *See Natale*, 318 F.3d at 584 (citations omitted). "'Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict.'" *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992) (alteration in original) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480; *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)).

The record reflects that at the time Gruwell filed his complaint, on December 26, 2007, a consult request had been submitted and approved for him to see a neurologist. He saw the neurologist on January 7, 2008, underwent an MRI, an EMG. The approval on November 20, 2007, notes that an appointment was scheduled for January 7, 2008. There is nothing in the record that indicates the delay from the date of approval to the date of the appointment was due to an act by CMS or its employees. Gruwell returned to the neurologist on January 8, 2009 for a follow-up. While Gruwell testified that from July 2007 until August or September of 2008, he did not receive any type of medication, the medication administration record, physician orders, and medical records, tell a different story. Moreover, it is evident when reviewing Gruwell's entire testimony and pleadings that, it is not that he did not receive any pain medication, but his complaint is that the medication was not the type administered to him by physicians prior to his incarceration and that the medication was not strong enough to relieve his pain.

The voluminous medical record evidences that Gruwell received continual pain medication since the inception of his July 2007 incarceration. He may believe that the pain medication was not strong enough or that it was improper medication, but it cannot be said that he was not provided medical treatment or that the medical staff was deliberately indifferent to his medical needs. If indeed, the medication was not strong enough to relief his pain, at the most, this lies under a theory of negligence which is not actionable under § 1983. The policies of which Gruwell complains, requiring approval for the administration of certain medications and consultations by other physicians, are not ones that can be considered deliberately indifferent. Rather, the requests and approval are based upon the medical judgment of medical personnel. Notably, the record reflects that all medication changes were approved and it appears that only

one consult request (submitted long after the allegations in the complaint) was denied. If anything, Gruwell disagrees with the pain medication he initially received. His disagreement, however, does not rise to the level of a violation of the Eighth Amendment.

Gruwell's claims are not borne by the record. No reasonable jury could conclude that a constitutional violation occurred. Therefore the court will grant CMS' motion for summary judgment.

## IV. CONCLUSION

For the above reasons, the court will grant CMS' motion for summary judgment. (D.I. 30.) The court will grant the motion to strike Gruwell's sur-reply as it was filed in derogation of LR 7.1.29(a). (D.I. 37.)

An appropriate order will be entered.

_____
CHIEF, UNITED STATES DISTRICT JUDGE

Sep 30 , 2010
Wilmington, Delaware

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JEFFREY L. GRUWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-845-GMS |
| | ) | |
| CORRECTIONAL MEDICAL SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

At Wilmington this 20th day of September, 2010, for the reasons set forth in the Memorandum issued this date

1. The defendant's motion for summary judgment is **granted**. (D.I. 30.)

2. The motion to strike is **granted**. (D.I. 37.)

3. The Clerk of Court is enter judgement favor of the defendant and against the plaintiff and to **close** the case.

_____
CHIEF, UNITED STATES DISTRICT JUDGE